UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TAMMIE THOMPSON and DEBRA LOVE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CIOX HEALTH, LLC, individually and d/b/a IOD INCORPORATED, and SCANSTAT TECHNOLOGIES, LLC,<br><br>Defendants. | CA No.  2:20-cv-2847-BHH<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Come now the Plaintiffs, Tammie Thompson and Debra Love, individually and on behalf of all others similarly situated, and respectfully allege the following:

**INTRODUCTION**

1. The state of South Carolina has a public policy of allowing patients to access their medical records. In fact, in South Carolina, patients and their legal representatives have the absolute right to receive copies of their medical records, including medical bills, in the format requested.

2. Defendants are some of the largest medical records providers in the country, copying and producing patient records for most of the nation's healthcare providers. They have taken the fees that healthcare providers may charge for copies of patient records and created a multi-billion dollar industry, primarily profiting from the fees they charge to third-parties, such as patients' attorneys.

3. As is discussed in more detail below, when patients' medical records are requested by their attorneys, Defendants systematically charge more for copies of the patients' records than is permitted by South Carolina law. Yet individual patients typically bear the ultimate responsibility for the costs of these overcharges.

4. Throughout the state of South Carolina, Defendants have taken patients' attorneys' right to access their medical records and unfairly and unlawfully profited at patients' expense. They continue to do so to this day.

5. Plaintiffs are individuals who have suffered and/or will continue to suffer the expense of Defendants' overcharging of their attorneys for copies of their own medical records.

## PARTIES AND JURISDICTION

6. Plaintiff Tammie Thompson is a South Carolina citizen who resides in Murrels Inlet, South Carolina.

7. Plaintiff Debra Love is a South Carolina citizen who resides in Charleston, South Carolina.

8. Plaintiffs bring this action on their own behalf and as representatives of a class of individuals further defined herein.

9. Defendant Ciox Health, LLC ("Ciox") is a Georgia limited liability company that provides release of information services for healthcare providers. Upon information and belief, IOD Incorporated ("IOD") is or was a Wisconsin corporation that merged with several other companies to form Ciox in approximately 2016 and has since changed its name to Ciox. At all relevant times herein, Ciox, individually and/or doing business as IOD, fulfilled medical records requests on behalf of healthcare providers in South Carolina.

2

10.     Defendant ScanSTAT Technologies, LLC ("ScanSTAT") is a Delaware limited liability company headquartered in Alpharetta, Georgia that provides release of information services for healthcare providers. At all relevant times herein, ScanSTAT fulfilled medical records requests on behalf of healthcare providers in South Carolina.

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because this is a class action with minimal diversity and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court has supplemental subject matter jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the District of South Carolina and pursuant to Local Civ. Rule 3.01 (D.S.C.) because, among others, one or more named Defendants conduct business relating to the events or omissions alleged in this Complaint within the Charleston Division.

13.     No other forum would be more convenient for the parties and witnesses to litigate this action.

## FACTUAL ALLEGATIONS

**I.     Defendants' Business Model**

14.     Ciox and ScanSTAT (collectively, the "Medical Records Companies" or "Defendants") are information management companies that provide release information services for healthcare providers. They are not healthcare providers themselves.

15.     Rather, upon information and belief, the Medical Records Companies generate tens of millions of dollars per year in profit from maintaining, retrieving, and producing patient records on behalf of healthcare providers across the country.

3

16. Upon information and belief, under their contracts with healthcare providers, the Medical Records Companies agree to process and fulfill medical records requests for the healthcare providers. The Medical Records Companies locate, retrieve, copy, and produce the requested records for healthcare providers and charge the recipient copying fees on the healthcare providers' behalf.

17. When a healthcare provider contracts with the Medical Records Companies, patients and their legal representatives have no other choice than to obtain copies of their medical records from the Medical Records Companies.

18. Upon information and belief, although they generate tens of millions of dollars per year in profit, the Medical Records Companies provide their services for healthcare providers free of charge.

19. In exchange, upon information and belief, the Medical Records Companies get to keep the copying fees they charge to recipients of patient records. Thus, the more money that the Medical Records Companies charge for copies of patient records, the greater their profit.

20. However, upon information and belief, the Medical Records Companies' contracts with healthcare providers require them to charge copying fees in accordance with federal and state laws and indemnify healthcare providers for any liability arising from violation of such laws.

21. Therefore, because federal law significantly limits the amount that individual patients may be charged for their medical records, for the majority of their profit, the Medical Records Companies rely on the fees they charge to third-parties, such as patients' attorneys, that request copies of patients' records.

22. Upon information and belief, acting on behalf of healthcare providers, the Medical Records Companies uniformly charge these third-parties the highest possible amount of copying

fees, regardless of the actual costs of copying patient records. The business model is simple: charge more, make more.

## II.     South Carolina's Medical Records Statute

23.     In South Carolina, access to patient records is governed by the Physicians' Patient Records Act, S.C. Code § 44–115–10, *et seq.* (the "Patient Records Act"), which gives patients and their legal representatives the right to receive copies of their medical records, including medical bills, in the format requested.

24.     The Patient Records Act also limits the amount of copying fees that healthcare providers may charge patients and their legal representatives for copies of patient records.

25.     Nevertheless, despite knowing or having constructive knowledge of the limits of the Patient Records Act, in their pursuit of profit, the Medical Records Companies willfully and consistently overcharge patients' attorneys for copies of patient records by engaging in unfair and unlawful billing practices, which include, but are not limited to, the following:

    a.     Producing electronic copies of patient records and then charging attorneys at the higher rate allowed for printed copies of patient records;

    b.     Charging certification fees, electronic data archive fees, retrieval fees, and other fees not authorized by the Patient Records Act;

    c.     Charging more than their actual costs for copies of X-rays and other types of imaging; and/or

    d.     Withholding copies of patients' medical bills from their initial production of records, even when medical bills are specifically requested, and then charging one search and handling fee for the production of medical records

and a second search and handling fee for the subsequent production of medical bills, disguising both fees as a "Basic Fee."

26. Although the above fees are charged to patients' attorneys, under their contracts with their attorneys, patients typically bear the responsibility for reimbursing their attorneys for expenses incurred.

27. Thus, the substantial profit the Medical Records Companies generate from engaging in the above-mentioned billing practices comes largely on the backs and at the expense of individual patients throughout the state of South Carolina, such as Plaintiffs.

### III.     Plaintiff Tammie Thompson's Medical Records

28. Plaintiff Tammie Thompson was injured in an accident on or about March 1, 2018. As a result, she received treatment from various healthcare providers in South Carolina.

29. Subsequently, Ms. Thompson hired an attorney based in Charleston, South Carolina to represent her in a personal injury lawsuit.

30. Under Mrs. Thompson's contract with her attorney, she was obligated to reimburse her attorney for the expenses incurred in the prosecution of her personal injury lawsuit.

31. On or about July 8, 2019, with written authorization from Ms. Thompson, Ms. Thompson's attorney requested her medical records, including her medical bills, from two of Ms. Thompson's healthcare providers, Conway Medical Center ("Conway"), which is located in Conway, South Carolina, and South Strand Medical Center, a department of Grand Strand Regional Medical Center ("Grand Strand"), which is located in Myrtle Beach, South Carolina.

####  a.     Billing for Ms. Thompson's Records from Conway

32. Upon information and belief, Conway had a contract with ScanSTAT whereby ScanSTAT would act as Conway's agent and fulfill medical records requests on Conway's behalf.

33. On or about July 12, 2019, Ms. Thompson's attorney received an invoice from ScanSTAT for $201.40, along with electronic copies of Ms. Thompson's medical records from Conway. Specifically, the invoice included the following charges: $25.00 for "Release Basic Fees"; $2.90 for "Shipping"; $19.50 for "Duplication Fee 1-30"; and $154.00 for "Duplication Fee 31-338."

34. At all relevant times herein, under the Patient Records Act, the maximum amount that a patient's legal representative could be charged for electronic copies of patient records was $160.05, exclusive of postage and tax.

    b.    **Billing for Ms. Thompson's Records from Grand Strand**

35. Upon information and belief, Grand Strand had a contract with Ciox whereby Ciox would act as Grand Strand's agent and fulfill medical records requests on Grand Strand's behalf.

36. On or about July 17, 2019, Ms. Thompson's attorney received an invoice from Ciox for $97.44, along with copies of Ms. Thompson's medical records from Grand Strand. Specifically, the invoice included the following charges: $26.30 for a "Basic Fee"; $20.40 for "Per Page Copy (Paper) 2"; $36.92 for "Per Page Copy (Paper) 1"; $8.30 for "Shipping"; and $5.52 for "Sales Tax." The invoice did not include a description of what the "Basic Fee" was for or how the "Basic Fee" was calculated.

37. Nevertheless, despite that the Patient Records Act included Ms. Thompson's medical bills within the definition of her medical records and despite that Ms. Thompson's attorney had specifically requested copies of her medical bills in the July 8, 2019 records request, Ciox did not include copies of Ms. Thompson's medical bills from Grand Strand with the July 17, 2019 production of Ms. Thompson's medical records.

38. Because Ciox had withheld copies of Ms. Thompson's medical bills from its initial production of her records, on or about October 8, 2019, Ms. Thompson's attorney sent Grand Strand another letter solely requesting copies of Ms. Thompson's previously-withheld medical bills.

39. On or about October 16, 2019, Ms. Thompson's attorney received a second invoice from Ciox for $23.48, along with copies of Ms. Thompson's medical bills from Grand Strand. This time, the invoice included the following charges: $15.00 for a "Basic Fee"; $5.85 for a "Per Page Copy (Paper) 1"; $1.30 for "Shipping; and $1.30 for "Sales Tax." The invoice did not include a description of what the "Basic Fee" was for or how the "Basic Fee" was calculated.

40. Accordingly, Ciox charged Ms. Thompson's attorney one "Basic Fee" for copies of her medical records from Grand Strand and a second and distinct "Basic Fee" for copies of her medical bills from Grand Strand, even though Ms. Thompson's attorney requested both in his initial medical records request.

41. At all relevant times herein, the Patient Records Act included medical bills within its definition of a patient's medical records and only allowed for one search and handling fee to be charged per records request.

**c.      Ms. Thompson's Expense**

42. Needing Ms. Thompson's records to pursue claims related to her accident and unable to determine the proper amount owed due to the invoices' failure to describe what the charges included, Ms. Thompson's attorney paid all of Defendants' invoices.

43. At the conclusion of her personal injury lawsuit, pursuant to her contract with her attorney, Ms. Thompson reimbursed her attorney for all expenses incurred, including the amounts

8

paid to Defendants. Thereby, Ms. Thompson bore the ultimate costs of Defendants' unlawful billing and was injured as a direct and proximate cause of Defendants' conduct.

**IV.     Plaintiff Debra Love's Medical Records**

44. Plaintiff Debra Love was injured in an accident on or about May 11, 2019. As a result she began receiving treatment from various healthcare providers in South Carolina.

45. Subsequently, Ms. Love hired a law firm based in Charleston, South Carolina to represent her in a personal lawsuit, which is currently ongoing.

46. Under her contract with her attorneys, Ms. Love is obligated to reimburse her attorneys for all expenses incurred in the prosecution of her personal injury lawsuit.

47. As part of Ms. Love's personal injury lawsuit, on or about July 22, 2019, with written authorization from Ms. Love, her attorneys requested copies of her medical records, including medical bills and X-rays, from the Medical University of South Carolina ("MUSC"), which is located in Charleston, South Carolina.

48. Upon information and belief, MUSC had a contract with Ciox and/or IOD whereby Ciox and/or IOD would act as MUSC's agent and fulfill medical records requests on MUSC's behalf.

49. On or about September 9, 2019, Ms. Love's attorneys received an invoice of $56.03 from IOD for a CD containing electronic copies of Ms. Love's imaging, which primarily included her X-rays from MUSC. The invoice included the following charges: $50.00 for "$50.00 for 1st CD"; $1.95 for "Shipping & Handling"; and $4.68 for "Sales Tax." Notably, the invoice also informed Ms. Love's attorneys that "[t]he requested information will be provided after payment

9

in full is received." The invoice did not include a description of what the "$50.00 for 1st CD" charge was comprised of or how it was calculated.

50.     Requiring copies of Ms. Love's imaging and X-rays for use in her personal injury lawsuit and unable to determine the proper amount owed due to the invoice's failure to describe what the charges included, Ms. Love's attorneys paid the September 9, 2019 invoice.

51.     At all relevant times herein, the Patient Records Act only permitted a patient's legal representative to be charged the actual costs of reproducing X-rays, defined as the cost of materials and supplies used to duplicate the X-ray and the associated labor and overhead costs.

52.     In further prosecution of Ms. Love's personal injury lawsuit, on or about December 5, 2019, with written authorization from Ms. Love, Ms. Love's attorneys requested electronic copies of her medical records, including medical bills, for subsequent treatment she received from MUSC.

53.     On or about February 4, 2020, Ms. Love's attorneys received an invoice from Ciox for $186.17, along with electronic copies of Ms. Love's medical records from MUSC. Notably, the invoice contained the following charges, among others: $26.30 for a "Basic Fee"; $2.00 for an "Electronic Data Archive Fee"; and $11.00 for a "Certification Fee." The invoice did not include a description of how these charges were calculated.

54.     Needing Ms. Love's records and unable to determine the proper amount owed due to the invoice's failure to describe what the charges included, Ms. Love's attorneys paid Ciox's February 4, 2020 invoice.

55.     At all relevant times herein, the Patient Records Act only authorized patients' legal representatives to be charged the following fees for copies of patient records: a per page fee, a search and handling fee, actual postage, and sales tax.

56. Plaintiff Debra Love will likely require further treatment from MUSC relevant to her personal injury lawsuit, which will cause her attorneys to request copies of her medical records from MUSC in the future.

## CLASS ALLEGATIONS

57. Plaintiffs bring this action individually and as the representatives of the Patient Records Class, defined as follows:

> All persons or entities who, at any time from August 5, 2017 through present, paid, were obligated to reimburse payment for, or are currently obligated to reimburse payment for a charge from one or more Defendants in violation of the Patient Records Act for copies of patient records that were requested from a South Carolina healthcare provider by the patient's attorney, and for which payment has not been reimbursed.

58. Plaintiffs' claims are typical of those of the proposed class members. Plaintiffs and the members of the proposed plaintiff class were damaged in the same way by the same conduct of the same Defendants.

59. Plaintiffs will adequately protect and represent the interests of the proposed plaintiff class. The interests of the Plaintiffs are allied with, and are not agnostic to, those of the proposed plaintiff class.

60. Plaintiffs are represented by attorneys who are experienced and competent in the prosecution of complex class action litigation.

61. Questions of law and fact common to the class include, but are not limited to, the following:

    a. Whether Defendants are subject to the fee limitations of the Patient Records Act;

    b. Whether Defendants' billing practices violate the Patient Records Act;

11

      c.      Whether Defendants have been unjustly enriched by systematically overcharging patients' attorneys for copies of patients' records; and/or

      d.      Whether Plaintiffs and the other proposed class members were damaged by Defendants' conduct.

62. The above-identified common questions predominate over questions, if any, that may affect only individual class members.

63. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

64. Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the necessary duplication of evidence, effort and expense that numerous individual actions would require.

## FIRST CAUSE OF ACTION

**Violation of S.C. Code § 44–115–80**

65. Plaintiffs hereby incorporate all paragraphs above as if fully stated herein.

66. The state of South Carolina enacted the Patient Records Act to specially benefit patients and their legal representatives by providing them with the right to access their medical records and limiting the amount of copying fees they may be charged.

67. Specifically, S.C. Code § 44–115–80 limits the amount of the fees that patients and their legal representatives may be charged for the search and duplication of patient records.

68. At all relevant times herein, under their contracts with healthcare providers, Defendants were acting as the agents of Plaintiffs' and the proposed class members' healthcare providers.

69. This agency relationship arose impliedly or explicitly from Defendants' contracts with Plaintiffs' and the other proposed class members' healthcare providers whereby Defendants would respond to medical records requests, produce copies of patient records, and charge fees to the recipient of patient records on the healthcare providers' behalf.

70. As the agent of Plaintiffs' and the other proposed class members' healthcare providers, Defendants had the duty not to charge more for copies of patient records than the healthcare providers themselves could legally charge under S.C. Code § 44–115–80.

71. Nevertheless, Defendants violated S.C. Code § 44–115–80 by overcharging Plaintiffs' and the other proposed class members' attorneys for copies of patient records.

72. Specifically, Defendant ScanSTAT violated S.C. Code § 44–115–80 by charging Plaintiff Tammie Thompson's attorney more than the maximum amount allowed for electronic copies of patient records.

73. Specifically, Defendant Ciox violated S.C. Code § 44–115–80 by withholding copies of Plaintiff Tammie Thompson's medical bills from its initial production of her records from Grand Strand and then charging Plaintiff Tammie Thompson's attorney one search and handling fee for the initial production of Ms. Thompson's medical records from Grand Strand and a second search and handling fee for Ciox's subsequent production of Ms. Thompson's medical bills from Grand Strand, disguising both charges as a "Basic Fee."

74. Upon information and belief, Defendant Ciox, doing business as IOD, also violated S.C. Code § 44–115–80 by charging Plaintiff Debra Love's attorneys more than the actual costs of reproducing Plaintiff Debra Love's X-Rays and other imaging from MUSC.

75. Additionally, Defendant Ciox violated S.C. Code § 44–115–80 by charging Plaintiff Debra Love's attorneys unauthorized fees, such as an "Electronic Data Archive Fee" and a "Certification Fee," for copies of Plaintiff Debra Love's records from MUSC.

76. Upon information and belief, Defendants' above-mentioned violations of S.C. Code § 44–115–80 are illustrative of the ways Defendants have violated and continue to violate S.C. Code § 44–115–80 when charging all other proposed class members' attorneys for copies of patient records.

77. Because of their business model and the nature of their contracts with healthcare providers, Defendants must be subject to the fee limits of S.C. Code § 44–115–80 or else the objectives of the Patient Records Act would be defeated.

78. Due to the manner of Defendants' overcharging, none of Plaintiffs' or the proposed class members' attorneys could have had full knowledge of the unlawful nature of Defendants' conduct at the time of paying Defendants' charges.

79. As a direct and proximate result of Defendants' unfair and unlawful overcharging of their attorneys for their medical records, Plaintiffs and all other proposed class members have suffered economic harm.

**SECOND CAUSE OF ACTION**

**Breach of Contract**

80. Plaintiffs hereby incorporate all paragraphs above as if fully stated herein.

81. By operation of law, there were either express or implied contracts between Defendants and Plaintiffs and the other proposed class members for the sale of copies of Plaintiffs' and the other proposed class members' medical records.

82. Under South Carolina law, there exists in every contract an implied covenant of good faith and fair dealing that neither party will do anything to impair the right of the other to receive the benefits of the agreement.

83. By willfully and deceptively charging the Plaintiffs' and other proposed class members' attorneys more than is allowed by S.C. Code § 44–115–80 for copies of Plaintiffs' and the other proposed class members' medical records, Defendants breached their implied covenant of good faith and fair dealing, thereby breaching their express or implied contracts with Plaintiffs and the other proposed class members.

84. As a result of Defendants' breach of their implied covenant of good faith and fair dealing, Plaintiffs and the other proposed class members have suffered economic harm.

## THIRD CAUSE OF ACTION

### Unjust Enrichment

85. Plaintiffs hereby incorporate all paragraphs above as if fully stated herein.

86. Through the payment of fees that Defendants unfairly and unlawfully charged their attorneys for copies of their medical records, Plaintiffs and the other proposed class members have conferred a valuable benefit upon the Defendants.

87. Defendants knowingly and voluntarily accepted this valuable benefit by retaining the full amount of the fees they unlawfully charged Plaintiffs' and the other proposed class members' attorneys for copies of medical records.

88. Defendants remain in possession of the money they unlawfully obtained at the ultimate expense of Plaintiffs and all other members of the proposed class.

89. Because Defendants obtained Plaintiffs' and all other proposed class members' money by acting in direct violation of S.C. Code § 44–115–80 and South Carolina's public policy of promoting access to patient medical records, it would be absurd, unjust, and inequitable to allow Defendants to retain such money and take financial advantage of their own wrongdoing.

## DECLARATORY JUDGMENT ACTION

90. Plaintiffs hereby incorporate all paragraphs above as if fully stated herein.

91. An actual, present, and justiciable controversy has arisen between Plaintiff Debra Love and other proposed class members and Defendants regarding Defendants' right to charge patients' attorneys more than is permitted by S.C. Code § 44–115–80 for copies of patients' medical records from healthcare providers that contract with Defendants.

92. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Plaintiffs in good faith request that the Court declare: (1) that Defendants are subject to the Patient Records Act and the fee limitations of S.C. Code § 44–115–80 and (2) that Defendants' manner of charging Plaintiffs' and the other proposed class members' attorneys for copies of patient records violates the Patient Records Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief and judgment as follows:

    a. Certification of the proposed plaintiff class, appointment of Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure, and appointment of Plaintiffs' counsel as class counsel;

b. For the return of all sums overcharged for copies of Plaintiffs' and the other proposed class members' medical records;

c. For interest on all amounts improperly charged for copies of Plaintiffs' and the other proposed class members' medical records;

d. For all other compensatory damages to be proven at trial;

e. For prejudgment interest;

f. Awarding Plaintiffs and the other members of the proposed plaintiff class their reasonable costs and expenses incurred in this action, including attorneys' fees;

g. For punitive damages in amount sufficient to serve as an example that deters others from engaging in similar conduct;

h. For an order declaring that Defendants are subject to S.C. Code § 44–115–80 and that Defendants' conduct violates the Patient Records Act;

i. For an injunction prohibiting Defendants from continuing to charge more than is allowed by South Carolina law for copies of patient medical records; and

j. Such other and further relief as the Court may deem just and proper.

**FURTHER WHEREFORE**, Plaintiffs demand a jury trial on all issues set forth herein to the extent permitted by law.

Respectfully submitted this 5th day of August, 2020.

    /s/ James C. Bradley
Michael J. Brickman (SC Bar #00874; Fed ID #1468)
Nina Fields Britt (SC Bar #68294; Fed ID #7924)
James C. Bradley (SC Bar #16611; Fed ID #7660)
RICHARDSON, PATRICK, WESTBROOK &
  BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A
Post Office Box 1007
Mount Pleasant, SC 29465
Phone: (843) 727-6500
mbrickman@rpwb.com
nfields@rpwb.com
jbradley@rpwb.com

***Attorneys for Plaintiffs***